# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JOANN D. BRITT,** | * | |
| Plaintiff, | * | |
| | | Civil Action No. RDB-19-0401 |
| v. | * | |
| **MEGAN J. BRENNAN,** | * | |
| *Postmaster General,* | | |
| | * | |
| Defendant. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff JoAnn D. Britt ("Plaintiff" or "Britt") brings this employment discrimination action against Defendant Megan J. Brennan, in her official capacity as Postmaster General of the United States Postal Service ("Defendant" or "USPS"), Britt's former employer. Britt alleges that she was unlawfully discriminated against because of her disability in violation of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §§ 12101 *et seq.*, and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 701 *et seq.* (Count I). She also alleges that she was unlawfully discriminated against because of her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* (Count II). Finally, Britt claims that she was retaliated against and subjected to a hostile work environment for her prior Equal Employment Opportunity activity (Count III). Presently pending is Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment. (ECF No. 42.) The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, the Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 42), treated as a Motion to Dismiss, shall be GRANTED.

Specifically, Counts I and II, claiming disability discrimination and age discrimination, will be DISMISSED WITH PREJUDICE. Plaintiff's hostile work environment claim under Count III will be DISMISSED WITH PREJUDICE, and Plaintiff's retaliation claim under Count III will be DISMISSED WITHOUT PREJUDICE.

**BACKGROUND**

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). The Court may consider only such sources outside the complaint that are, in effect, deemed to be part of the complaint, for example, documents incorporated into the complaint by reference and matters of which a court may take judicial notice. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

Plaintiff Britt worked at the Emmitsburg Post Office for approximately fifteen years until on or about May 22, 2017, when she was terminated from her position. (Am. Compl. ¶¶ 1, 10, 21, 38, ECF No. 38.) On or about February 23, 2012, Britt alleges that she filed a United States Department of Labor workman's compensation and disability claim. (*Id.* ¶ 4.) Some time thereafter, Britt had surgery on her right shoulder for injuries allegedly sustained on the job. (*Id.* ¶ 10.) Consequently, Britt obtained a workman's compensation Modified Assignment (Limited Duty) from the United States Department of Labor ("DOL Limited Duty") for work hours, instituting weightlifting requirements limited to five pounds on her right arm and twenty pounds with both arms. (*Id.*)

2

Beginning on or about November 16, 2016, Britt alleges that she was subjected to harassment, discrimination, and retaliation when she returned to work after her shoulder surgery. (*Id.*) She alleges that she was denied her 15-minute break by her supervisors, and that the Officer in Charge[1] would assign her work that was not permitted by her DOL Limited Duty designation. (*Id.* ¶¶ 11, 16.) Britt claims that a co-worker would take unapproved leave during Britt's work hours, which added additional responsibilities for Britt that were also not permitted by her DOL Limited Duty designation, such as "dangerous lifting of heavy mail, and additional work loads." (*Id.*) Britt also alleges that co-workers told customers that Britt was "the reason that the [Emmitsburg] post office did not have a postmaster because no one wanted to work in that office because of her." (*Id.*) On another occasion, Britt alleges that the acting postmaster Eric Darr ("Darr") said to Britt, "why don't you go and get a job at a doctor's office," which she alleges was referring to her need to see doctors for her disability. (*Id.* ¶ 12.)

Britt further asserts that the Officer in Charge made a co-worker, Vickie Alcorn ("Alcorn"), work outside her regular hours to cover for Britt's DOL Limited Duty work hours and duties, circumstances about which Alcorn did not know but for which Alcorn allegedly resented Britt. (*Id.* ¶¶ 14, 16, 19.) Britt, who alleges she was 42 years old at the time,[2] asserts that the Officer in Charge wanted to replace Britt with a younger co-worker, Amanda Whetzel ("Whetzel"), who was 32 years old. (*Id.* ¶¶ 15, 39.)

---

[1] Britt does not identify the "Officer in Charge."
[2] The Amended Complaint also asserts that Britt was 45 years old at this time. (*See* Am. Compl. ¶ 32, ECF No. 38.) Based on Britt's representation that she was born in March of 1972, her current age is 48. (*Id.*)

3

On or about April 14, 2017, Britt alleges she was unlawfully placed on "emergency placement leave off-duty without pay" for false allegations of a "tugging/grabbing on letters" incident between Britt and Alcorn. (*Id.* ¶ 19.) As a result, Britt alleges that she filed a United States Postal Service ("USPS") Equal Employment Opportunity ("EEO") complaint of discrimination against Darr, Whetzel, and Alcorn. (*Id.* ¶ 20.) The Amended Complaint does not provide further detail on this incident, but Defendant has provided the USPS letter placing Britt on off-duty status and the USPS notice of removal, in addition to several Equal Employment Opportunity ("EEO") documents pertaining to Britt's EEO complaint, all of which this Court may consider as integral to the Amended Complaint without converting the subject motion to one for summary judgment. *See Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 648 (D. Md. 2015) (quoting *CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) (the Court may consider "any document that the defendant attaches to its motion to dismiss if the document was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity.")).

The April 14, 2017 USPS letter to Britt provides,

> On Friday April 14, 2017 [Britt] approached a co-worker and attempted to forcibly remove Letters from her hand while she was sorting mail. When [Britt's] coworker told [Britt] that she would sort the letters [Britt] continued to try to remove them from her hand. When [Britt's supervisor] approached [Britt] about the incident and instructed [Britt] to leave the premises [Britt] became argumentative and loud. [Britt's supervisor] had to instruct [Britt] three times to leave.

(April 14, 2017 USPS letter to Britt, ECF No. 42-9.) Based on these allegations, Britt was placed on off-duty (without pay) status. (*Id.*) On May 19, 2017, USPS sent Britt a Notice of

4

Removal letter, terminating Britt's employment with the USPS based on Britt's violation of its "zero tolerance policy/improper conduct." (*Id.*)

The EEO documents show that Britt initially contacted the EEO Office on May 3, 2017. (EEO Alternative Dispute Resolution Specialist's Inquiry Report, ECF No. 42-10.) On May 22, 2017, when Britt alleges she received a stamped draft of her USPS EEO complaint, Britt alleges she also received the notice of removal "for false accusations of Violation of Zero Tolerance Policy solely from the alleged mail exchange incident." (Am. Compl. ¶¶ 20-21, ECF No. 38.) On or about June 23, 2017, Britt filed a formal EEO complaint based on age and disability discrimination. (*Id.* ¶ 22; EEO Complaint, ECF No. 42-11.) On or about November 13, 2018, after Britt waived her right to an administrative hearing, the USPS issued its Final Agency Decision of Britt's EEO complaint, concluding that Britt had failed to establish a *prima facie* case of discrimination. (Final Agency Decision, ECF No. 42-12.)

Britt filed a Complaint in this Court on February 10, 2019. (ECF No. 1.) Defendant filed a Motion to Dismiss, or in the Alternative, for Summary Judgment on August 19, 2019. (ECF No. 35.) Britt filed the operative Amended Complaint on September 20, 2019. (ECF No. 38.) On October 21, 2019, Defendant filed the presently pending Motion to Dismiss, or in the Alternative, for Summary Judgment of Britt's Amended Complaint. (ECF No. 42.) On January 6, 2020, this Court found as moot Defendant's original Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 35). (ECF No. 45.)

**STANDARD OF REVIEW**

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

5

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The United States Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

## ANALYSIS

Britt has asserted three Counts against Defendant USPS for disability and age discrimination. First, she asserts that she was wrongfully terminated based on her disability

6

(Count I). Second, she asserts that she was wrongfully terminated based on her age (Count II). Third and finally, she asserts that she was subjected to a hostile work environment and retaliated against because of her disability, age, and protected Equal Employment Opportunity activity (Count III).

Where, as here, the record contains no direct evidence of discrimination, a plaintiff's claims must be analyzed under the burden-shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Hawkins v. Pepsico, Inc.*, 203 F.3d 274, 281 (4th Cir. 2000). Under this framework, the plaintiff must first present enough evidence to prove a *prima facie* case of disparate treatment. *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 142-43 (2000). Second, once he establishes a *prima facie* case, the burden shifts to the defendant to produce evidence that the adverse employment action was taken against the plaintiff "for a legitimate, nondiscriminatory reason." *Id.* at 142. Third, the plaintiff is "afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (quoting *Tex. Dept. Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). In this case, Britt's claims fail because she has not pled any *prima facie* claims of unlawful discrimination.

I.     **Disability Discrimination (Count I)**

Both Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act prohibit discrimination against people with disabilities. Title II of the ADA states that "no qualified individual with a disability shall by reason of such disability be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Similarly, Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794. The United States Court of Appeals for the Fourth Circuit analyzes these two statutes together. *See Seremeth v. Bd. of Cnty. Comm'rs Frederick Cnty.*, 673 F.3d 333, 336 n.1 (4th Cir. 2012).

To establish a *prima facie* case of wrongful termination under the ADA and the Rehabilitation Act, a plaintiff must allege that (1) she was subject to an adverse employment action, (2) she was a qualified individual with a disability under the ADA, (3) her performance at the time of discharge met the legitimate expectations of her employer, and (4) her "discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702 (4th Cir. 2001) (citing *Ennis v. Nat'l Assoc. of Business & Educ. Radio*, 53 F.3d 55, 58 (4th Cir. 1995)).

The parties do not dispute that Britt is a qualified individual with a disability based on her workman's compensation Modified Assignment (Limited Duty) from the United States Department of Labor for work hours, instituting weightlifting requirements limited to five pounds on her right arm and twenty pounds with both arms. (Am. Compl. ¶ 10, ECF No. 38.) Nor do the parties dispute that Britt was subject to an adverse employment action when she was terminated from her employment with the USPS. However, Britt's disability discrimination claim fails on the third and fourth prongs. The Amended Complaint is wholly devoid of any allegation that Britt's termination was in any way related to her disability and

8

physical work restrictions. Instead, Britt alleges that she was "unlawfully placed on 'emergency placement leave off-duty without pay' upon false allegations of a tugging/grabbing on letters" incident with Alcorn. (*Id.* ¶ 19.) Britt's allegations that her "DOL Limited Duty restrictions were resented by Mr. Darr and her coworkers as a special accommodation," which subjected Britt "to discrimination, accusations, and ridicule," are mere conclusory allegations, and Britt does not allege any nexus between these allegations and her termination. (*Id.* ¶ 13.) Such allegations do not suffice to allege that the USPS terminated Britt under "circumstances that raise a reasonable inference of unlawful discrimination." *See Haulbrook*, 252 F.3d at 702.

Indeed, Britt's allegations surrounding her termination do not reflect that her work was satisfactory, as she was placed on emergency leave for an alleged physical altercation with a coworker. This incident resulted in Britt's termination with the USPS based on Britt's violation of its "zero tolerance policy/improper conduct." (USPS Notice of Removal, ECF No. 42-4.) Accordingly, Britt also fails to allege that she was meeting the legitimate expectations of her employer when she was terminated.

In sum, there are simply no allegations in the Amended Complaint that assert a plausible claim of disability discrimination. Accordingly, Count I will be dismissed with prejudice.

## II. Age Discrimination (Count II)

The ADEA "protect[s] a relatively old worker from discrimination that works to the advantage of the relatively young." *General Dynamics Land Systems, Inc. v. Cline*, 540 U.S. 581, 591, 124 S.Ct. 1236, 157 L.Ed.2d 1094 (2004). In order to allege a *prima facie* case of age discrimination under the ADEA, a plaintiff must assert that she (1) is a member of the

9

protected class, *i.e.* is at least 40 years old; (2) suffered an adverse employment action; (3) was meeting her employer's legitimate expectations at the time of the adverse action; and (4) was replaced by or treated less favorably than someone who is either outside the protected class or "substantially younger" than she is. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Baqir v. Principi*, 434 F.3d 733, 742 (4th Cir. 2006).

The parties do not dispute that Britt is a member of the protected class, as she was at least 40 years old at the time of her termination, which constituted an adverse employment action. However, for the same reasons discussed above, Britt fails to allege that she was meeting her employer's expectations when she was terminated. Britt alleges that her termination was the result of an altercation between Britt and Alcorn. (Am. Compl. ¶ 19, ECF No. 38.) Britt's allegations that USPS "sought to constructively discharge [Britt] because of her age because her coworker Ms. Whetzel, who is 10 years younger than her, wanted her employment position," and that she was ultimately replaced by Whetzel, do not salvage Britt's claim. (*See id.* ¶¶ 34, 39.) Such allegations are mere threadbare recitals of the cause of action for age discrimination under the ADEA, and do not suffice to plead a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, Britt fails to explain how her termination, based on an altercation between her and Alcorn, not Whetzel, was linked to her age in any way. Accordingly, Britt's conclusory allegations are insufficient to state a claim for age discrimination, and Count II will be dismissed with prejudice.

### III. Hostile Work Environment and Retaliation (Count III)

Britt asserts her retaliation and hostile work environment claims together in Count III. Claims of hostile work environment and retaliation involving disability discrimination are

10

governed by the Rehabilitation Act, and are assessed under the same standard assessing Title VII claims. *See Wonasue v. University of Maryland Alumni Ass'n*, 984 F. Supp. 2d 480, 491 (D. Md. 2013); *Westmoreland v. Prince George's Cty., Md.*, 876 F. Supp. 2d 594, 614 (D. Md. 2012).

**A. Hostile Work Environment**

To establish a *prima facie* case for a hostile work environment, a plaintiff must demonstrate that: "(1) the harassment was unwelcome; (2) the harassment was based on his [disability or age;] (3) the harassment sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998). In weighing whether conduct was sufficiently "severe or pervasive," courts consider the following factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Sys.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

The Fourth Circuit has set a "high bar in order to satisfy the severe or pervasive test." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). The Fourth Circuit has recognized that,

> [w]orkplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life. Thus, complaints premised on nothing more than "rude treatment by [coworkers]," "callous behavior by [one's] superiors," or "a routine difference of opinion and personality conflict with [one's] supervisor," are not actionable under Title VII.

11

*Id.* at 315-16 (quoting *Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003); *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 276 (4th Cir. 2000)).

Britt's factual allegations are insufficient to "raise a right to relief above the speculative level." *McLeary-Evans v. Maryland Dept. of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). Britt alleges sporadic incidents, none of which were physically threatening, and none of which were extremely serious. (*See* Am. Compl., ECF No. 38.) Britt asserts that: she was often denied her 15-minute break by her supervisors (*id.* ¶ 11); coworkers told customers that Britt was "the reason that the [Emmitsburg] post office did not have a postmaster because no one wanted to work in that office because of her" (*id.*); acting postmaster Darr told her "why don't you go and get a job at a doctor's office" (*id.* ¶ 12); Alcorn would refuse to assist Britt at the counter (*id.* ¶ 16); and Alcorn and Darr tried to intimidate Britt into quitting (*id.* ¶ 16). While these allegations establish that Britt subjectively perceived her work environment as hostile, Britt's examples of discriminatory conduct do not describe harassment that is severe or pervasive enough to plausibly allege an objectively hostile work environment. Accordingly, Britt's hostile work environment claim will be dismissed with prejudice.

**B. Retaliation**

The elements of a retaliation claim are: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004)). A protected activity may fall into two

categories, opposition and participation. 42 U.S.C. § 2000e-3(a). The participation clause protects an employee from retaliation where he "has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing" under Title VII. *Id.* As for the opposition clause, the Fourth Circuit has held that "protected oppositional activities may include 'staging informal protests and voicing one's own opinions in order to bring attention to an employer's discriminatory activities,' as well as 'complaints … about suspected violations.'" *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005) (quoting *Bryant v. Aiken Reg'l Med. Ctrs.*, 333 F.3d 536, 543-55 (4th Cir. 2003)). The only protected activity Britt has engaged in was her filing an Equal Employment Opportunity complaint ("EEO complaint") for discrimination against her coworkers. (Am. Compl. ¶¶ 20, 43, ECF No. 38.).

While Britt sufficiently alleges both protected activity and an adverse employment action, the Amended Complaint does not sufficiently allege a causal link between the two. This Court has held that an inference of a causal connection exists where the adverse action occurs "shortly after learning of the protected activity." *Cepada v. Bd. of Educ. of Baltimore County*, 814 F. Supp. 2d 500, 515 (D. Md. 2011). Such presence of a "close" temporal relationship between the protected activity and the alleged adverse action can be sufficient to establish a causal connection at the pleading stage. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (holding that alleged "temporal proximity" must be "very close" to satisfy this third element).

If the employer did not know of the protected activity, then even temporal proximity cannot save a plaintiff's claim. *Price v. Thompson*, 380 F.3d 209, (4th Cir. 2004), *abrogation on other grounds recognized by Waag v. Sotera Defense Solutions, Inc.*, 857 F.3d 179, 192 (4th Cir. 2017)

(explaining that an employer must know the employee engaged in protected activity as a prerequisite to establishing a causal connection). The Fourth Circuit has not set forth a specific timeframe for what constitutes "very close." *Pascaul v. Lowe's Home Centers, Inc.*, 193 Fed. App'x 229, 233 (4th Cir. 2006). However, in cases where the temporal proximity is "missing," "courts may look to the intervening period for other evidence of retaliatory animus." *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

The Amended Complaint fails to allege when Britt filed her EEO complaint. (*See* Am. Compl. ¶¶ 19-22.) Britt alleges she was placed on emergency leave on April 14, 2017, and then "[o]n May 22, 2017, [Britt] received back in her mail a stamped draft of her USPS EEO complaint of discrimination against Darr, Alcorn and Whetzel which she had made after being placed on leave." (*Id.* ¶¶ 19-20.) She further alleges that on May 22, 2017, "immediately after delivery of the USPS EEO complaint," she received the notice of removal from Defendant. (*Id.* ¶ 21.) Britt also alleges that on June 24, 2017, the EEO office "formally accepted the final draft of plaintiff's complaint." (*Id.* ¶ 22.) Such allegations do not sufficiently allege any temporal proximity between Britt's filing of the EEO complaint and her termination. It is not clear whether Britt's EEO complaint was filed in April, May, or June, and Britt does not allege when Defendant even had notice of her EEO filing. Such deficiencies are fatal to Britt's retaliation claim. Britt, in her Amended Complaint, has not alleged plausible additional facts that could assert a causal nexus between her protected activity and her termination. As a result, her retaliation claim under Count III will also be dismissed, but without prejudice.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 42), treated as a Motion to Dismiss, is GRANTED. Specifically, Counts I and II will be DISMISSED WITH PREJUDICE. Plaintiff's hostile work environment claim under Count III will be DISMISSED WITH PREJUDICE, and Plaintiff's retaliation claim under Count III will be DISMISSED WITHOUT PREJUDICE.

A separate Order follows.

Dated: April 8, 2020

_____/s/_____
Richard D. Bennett
United States District Judge